| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------x<br>CHAILE STEINBERG, derivatively on behalf :<br>of JPMorgan Chase & Co., :<br>   :<br>            Plaintiff, :<br>   :<br>   v. :<br>   :<br>JAMES DIMON, ELLEN V. FUTTER, JAMES S. :<br>CROWN, DAVID M. COTE, JAMES A. BELL, :<br>CRANDALL C. BOWLES, LABAN P. :<br>JACKSON, JR., WILLIAM H. GRAY, III, :<br>DAVID C. NOVAK, STEPHEN B. BURKE, :<br>LEE R. RAYMOND, WILLIAM C. WELDON, :<br>DOUGLAS L. BRAUNSTEIN, :<br>MICHAEL J. CAVANAGH, and INA R. DREW, :<br>   :<br>            Defendants, :<br>   :<br>   -and- :<br>   :<br>JPMORGAN CHASE & CO., :<br>   :<br>            Nominal Defendant. :<br>   :<br>------------------------------------------------------------------x | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: <u>July 16, 2014</u><br><br><br><br><br>14 Civ. 688 (PAC)<br><br>**OPINION & ORDER** |

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Chaile Steinberg ("Steinberg"), a shareholder of JPMorgan Chase & Co. ("JPMorgan"), brings this derivative action for damages due to alleged breaches of fiduciary duty, violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Securities Act"), waste of corporate assets, and unjust enrichment by the fifteen individual named defendants ("Defendants"), some of whom are Board members. JPMorgan, a Delaware corporation, is named solely in its derivative capacity. Steinberg claims that JPMorgan was damaged by a series of six recent, high profile settlements with government agencies and private litigants

arising out of allegations of egregious misconduct.  Steinberg alleges that no demand on JPMorgan's Board of Directors was necessary because such demand would be futile.

Defendants now move to dismiss because the Complaint fails to allege with particularity facts sufficient to excuse Steinberg's failure to make demand upon the Board prior to filing the derivative action.  The Court agrees, and therefore GRANTS Defendants' motion to dismiss.

## BACKGROUND

The defendants are the Chief Executive Officer and Chairman of the Board James Dimon, seven current and four former Board members (collectively, the "Director Defendants"),[1] and three current or former corporate officers.[2]  All of the Director Defendants other than the Chairman/CEO are or were outside, non-management directors.

Steinberg claims that Defendants knowingly or recklessly permitted JPMorgan to "embark on [an] unprecedented course of reckless and unlawful conduct in order to increase their own personal fortunes."  Compl. ¶ 4.  Specifically, Steinberg bases the claims on misconduct allegedly uncovered as a result of the following governmental investigations or private litigations:  (1) a July 2013 settlement with the Federal Energy Regulatory Commission regarding alleged manipulative bidding in the electricity market, Compl. ¶¶ 48-51, (2) a 2013 investigation by the Securities and Exchange Commission into a hiring program under which certain positions were allegedly given to family members of Asian business owners and officials (the "Sons and Daughters Program"), *id*. ¶¶ 52-57, (3) a September 2013 settlement with the Consumer Financial Protection Bureau and the Office of the Comptroller of the Currency

---

[1] Defendants Crown, Bell, Bowles, Jackson, Burke, Raymond, and Weldon are current Board members, and Defendants Cote, Futter, Gray, and Novak are former Board members.

[2] Defendants Braunstein, Cavanagh, and Drew served as senior executives at JPMorgan during the relevant time period.  Braunstein is Vice Chairman; Cavanagh is Co-CEO of the Corporate and Investment Bank; and Drew was the Chief Investment Officer.

regarding billing practices and allegedly erroneous documents filed in delinquent debtor lawsuits, *id.* ¶¶ 63-64, (4) a December 2013 settlement with European Union regulators regarding alleged manipulation of the London Interbank Offered Rate, *id.* ¶ 69, (5) a January 2014 deferred prosecution agreement with the U.S. Attorney's Office for the Southern District of New York ("USAO") relating to Bernard L. Madoff Investment Securities LLC, *id.* ¶ 71, 75, 94, and (6) 2013 settlements of private litigation arising out of the origination and securitization of residential mortgage-backed securities ("RMBS"), *id.* ¶¶ 97-98, 100-05.  Steinberg also alleges that the Defendants made a number of misrepresentations and omissions in their securities filings and proxy statements.[3]  Overall, since 2009, JPMorgan has paid nearly $32 billion in penalties, and Steinberg seeks damages as a result of JPMorgan's payment of those penalties.  *Id.* ¶ 2.

Based on these six occurrences, Steinberg asserts the following claims:  (1) breach of fiduciary duty for failing to implement adequate internal controls and issuing misleading statements, (2) violation of Section 14(a) of the Securities Act for causing to be issued misleading statements in the 2011, 2012, and 2013 proxy statements, (3) waste of corporate assets against the Defendants for failing to implement adequate internal procedures and improper compensation of JPMorgan's executive officers and directors, and (4) unjust enrichment against the Defendants as a result of the compensation they received while breaching their fiduciary duties.

Steinberg claims no demand was made on the current Board due to its futility since a majority of the Board is "not disinterested and cannot fairly and adequately evaluate any demand made on the JPMorgan Board of Directors."  *Id.* ¶ 206.

---

[3] Specifically, Steinberg claims that JPMorgan was falsely marketing its RMBS by misrepresenting basic information about the underlying mortgage loans in securities filings, Compl. ¶ 162, and that its proxy statements omitted material information regarding JPMorgan's true financial condition and risk management structure, *id.* ¶¶ 187, 193, 199, and the existence of multiple regulatory investigations, *id.* ¶ 176.

**DISCUSSION**

**I.      Legal Standard**

Federal Rule of Civil Procedure 23.1(b) requires that a shareholder bringing a derivative suit state with particularity plaintiff's efforts "to obtain the desired action from the directors or comparable authority," (*i.e.*, make demand), and "the reasons for not obtaining the action or not making the effort," (*i.e.*, futility).  In determining whether demand is required or excused, the Court applies the substantive law of Delaware, JPMorgan's state of incorporation.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98-99 (1991).

Under Delaware law, the cause of action or claim belongs to the corporation.  *See Cantor v. Sachs*, 162 A. 73, 76 (Del. Ch. 1932).  A shareholder's right to "prosecute a derivative suit is limited to situations where the [shareholder] has demanded that the [nominal defendant's] directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993).  "[T]he demand requirement . . . exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits," in "recognition of the fundamental precept that directors manage the business and affairs of corporations."  *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984).

Steinberg must show the futility of making demand by adequately alleging that the directors were "incapable of making an impartial decision regarding the pursuit of the litigation." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008).  Where a plaintiff challenges a board's oversight duties, he or she must plead particularized facts that "create a reasonable doubt that, as of the time the complaint [was] filed, the board of directors could have properly exercised its

independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934. A plaintiff creates a reasonable doubt solely by demonstrating that a majority of the Board's members are interested. *See Rattner v. Bidzos*, No. Civ.A. 19700, 2003 WL 22284323, at *13 (Del. Ch. Oct. 7, 2003). "Vague or conclusory allegations do not suffice to challenge the presumption of a director's capacity to consider demand." *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007).

## II.     Steinberg Is Not Excused From Making Demand on the Board

Steinberg alleges that eight of the Director Defendants, including Chairman/CEO Dimon, are not independent and therefore a majority of the Board's eleven members are interested. *See* Compl. ¶¶ 210-39. The parties appear to agree that demand would be futile as to Defendant Dimon. *Id.* ¶¶ 210-13; *see* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint for Failure to Make a Pre-Litigation Demand ("Defs.' Mot."), ECF No. 13, at 7. Thus, the Court will only consider whether the seven, non-management Director Defendants, who were on the Board at the time the Complaint was filed (the "Outside Directors"), face a substantial likelihood of liability for their alleged individual misconduct or have a number of personal and professional conflicts of interest.

### A.     Substantial Likelihood of Liability

A reasonable doubt that a board could have exercised disinterested and independent business judgment in considering demand is established where a majority of the board of directors faces a "substantial likelihood" of personal liability from the legal action. *Rales*, 634 A.2d at 936 (citing *Aronson,* 473 A.2d at 815). Steinberg fails to allege particularized facts demonstrating that the Outside Directors will likely face liability for their purported misconduct. The "mere threat" of personal liability is not enough to render a director interested, *id.*, and

"[d]emand is not excused solely because the directors would be deciding to sue themselves," *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009).

### 1. *Caremark* Claims

Steinberg's claim for breach of fiduciary duty is a *Caremark* claim, *i.e.*, failure to monitor. *Caremark* claims require proof that "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *see In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996). Steinberg first claims that the Directors "utter[ly] fail[ed] to implement adequate reporting or information system or controls." *See* Steinberg's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint ("Pl.'s Opp'n"), ECF No. 18, at 14. The issue, however, is not whether JPMorgan's controls were adequate, but whether any existed. *See Stone*, 911 A.2d at 370. Clearly, controls existed at JPMorgan, as the Complaint recognizes by alleging controls such as the oversight responsibilities of the Board's committees, *see* Compl. ¶¶ 216, 219, 222, 227, 231, 234, 238, the company's code of conduct, *see id.* ¶ 181, and the loan-origination control system, *see id.* ¶¶ 127-39.

Next, Steinberg argues that the Board purposefully disregarded risks related to the company's allegedly unlawful practices by failing to monitor or oversee operations. *See* Pl.'s Opp'n at 15-19. But JPMorgan's certificate of incorporation specifically immunizes its directors from personal liability for actions taken in good faith, so plaintiff must also plead particularized facts demonstrating that the Board acted with "scienter, *i.e.*, that there was an 'intentional dereliction of duty' or 'a conscious disregard' for their responsibilities, amounting to bad faith,"

6

*In re Goldman Sachs Grp. Inc. S'holder Litig.*, No. 5215-VCG, 2011 WL 4826104, at *12 (Del. Ch. Oct. 12, 2011).[4] To establish bad faith, Steinberg identifies a number of purported "red flags" that should have alerted the Board to the misconduct underlying each of the six investigations. *See* Pl.'s Opp'n at 4, 17. But Steinberg fails to provide particularized facts demonstrating that *any* of the Outside Directors knew or should have known about *any* of the alleged "red flags." For example, the Complaint refers to various internal reports and communications, but never alleges that the Board ever saw these documents. *See id.* ¶¶ 50, 52-57, 80-83, 91. While a senior Hong Kong executive's email discussing the Sons and Daughters program may establish that executive's scienter, *see id.* ¶ 57, it does not do so for the Board. *See South v. Baker*, 62 A.3d 1, 16 (Del. Ch. 2012). Since Steinberg fails to demonstrate bad faith based on the existence of "red flags," the Complaint fails to establish a substantial likelihood that the Board will be liable for the *Caremark* claims.

### 2. Section 14(a) Claims

Steinberg also alleges that the Outside Directors breached their fiduciary duties and violated Section 14(a) of the Securities Act by signing or causing to be issued proxy statements and securities filing that contained material misrepresentations or omissions. *See* Pl.'s Opp'n at 23-24. As a preliminary matter, Steinberg must establish scienter, and again fails to do so.[5] The Board's mere "execution of . . . financial reports, without more, is insufficient to create an

---

[4] Steinberg attempts to avoid the exculpatory clause in JPMorgan's charter by arguing that it did not apply prior to 2006. Although this version of the charter does not govern pre-2006 conduct, JPMorgan's prior charter also contained an exculpatory provision. *See* Declaration of Stuart J. Baskin in Support of Defendants' Motion to Dismiss the Complaint for Failure to Make a Pre-Litigation Demand, ECF No. 20, Exs. A & B. Furthermore, Steinberg is simply wrong that an exculpatory clause cannot be considered on a motion to dismiss.

[5] Although the Complaint characterizes the Section 14(a) claim as sounding in negligence, *see* Compl. ¶ 273, Steinberg cannot wish away the heightened pleading standard for fraud. In fact, Steinberg's opposition brief describes the Director Defendants' conduct as "intentional misconduct by knowingly and deliberately misleading shareholders" in the proxy statements. Pl.'s Opp'n at 23-24. "This is essentially a fraud claim, and Plaintiffs will not be allowed to reclassify their claims to avoid the pleading standards of Rule 9(b)." *Police and Fire Retirement Sys. of Detroit v. Safenet, Inc.*, 645 F. Supp. 2d 210, 238 (S.D.N.Y. 2009).

inference that the directors had actual or constructive notice of any illegality," *see Wood*, 953 A.2d at 142, and any allegations of purported "red flags" fail to meet the heightened pleading standard, *see supra*.  Furthermore, on the Section 14(a) claim, "[i]t is far too general and there is no essential link from the misstatements to the shareholder approval sought."  *See Police and Fire Retirement Sys. of Detroit*, 645 F. Supp. 2d at 239.  As a result, it is unlikely that any of the Outside Directors breached his or her fiduciary duty in connection with the alleged misrepresentations, and therefore demand cannot be excused on this basis.

### 3. Analysis of Remaining Claims

Steinberg's remaining claims against the Outside Directors also fail.  Steinberg's claim for waste of corporate assets does not contain "particularized facts that lead to a reasonable inference that the director Defendants authorized 'an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'"  *In re Am. Int'l Gr., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 440 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011) (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)).  Furthermore, a claim for unjust enrichment cannot be maintained where, as here, the "only enrichment alleged by plaintiffs consists of defendants' salaries, benefits, and unspecified bonuses."  *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010).

Accordingly, the Court holds that there is not a "substantial likelihood" that any of the Outside Directors can be held liable, and therefore Steinberg has not established a reasonable doubt that the Board could have exercised disinterested and independent business judgment.  *See Rales*, 634 A.2d at 936.

### B.     Conflicts of Interest

Steinberg alleges a number of conflicts of interests, none of which create a reasonable doubt about the independence of the Outside Directors.  *See* Pl.'s Opp'n at 21-22.  Steinberg first points to the Outside Directors' compensation and fees, which is insufficient to excuse demand "without specific facts suggesting a lack of independence." *Fink v. Komansky,* No. 03 Civ. 0388, 2004 WL 2813166, at *7 (S.D.N.Y. Dec. 8, 2004)).  Next, the Complaint cites JPMorgan's extensions of credit, Compl. ¶¶ 220. 224, 228, 232, 239, financial advisory relationships, *id.* ¶ 220, and leasing of office space, *id.* ¶ 228, as potential conflicts.  But JPMorgan "is a national commercial and investment bank" and therefore its providing of these services "should come as no shock to anyone." *See In re J.P. Morgan Chase & Co. S'Holder Litig.*, 906 A.2d 808, 822 (Del. Ch. 2005).  Steinberg also points to JPMorgan's charitable contributions, Compl. ¶ 228, but this does "not excuse demand without many more particularized facts about the materiality of the relationship in question," *La. Mun. Police Ret. Sys.*, 2009 WL 1422868, at *6 (internal quotations omitted).  Lastly, Steinberg relies on two ongoing investigations and JPMorgan's required cooperation with the USAO relating to the Madoff settlement without explaining how or why these issues render the Board not independent.  *See* Pl.'s Opp'n at 23.  Since none of these alleged conflicts of interest create a reasonable doubt as to the Outside Directors' independence, demand is not excused.

## CONCLUSION

Accordingly, Plaintiff has failed to plead particularized facts that create a reasonable doubt that a majority of the Board could have exercised disinterested and independent business judgment in considering demand, and Plaintiff's failure to make demand is not excused.  The

Court therefore GRANTS Defendants' motion to dismiss the Complaint. The Clerk of Court is directed to enter judgment and close this case.

Dated: New York, New York
      July 16, 2014

SO ORDERED

PAUL A. CROTTY
United States District Judge